UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION-FLINT

UNITED STATES OF AMERICA,
                        Plaintiff,                    No. 06-20286

                                              Hon. Paul V. Gadola

CHARLES GARY-DON ABBEY
                        Defendant.
_____

| | |
|---|---|
| Robert W. Haviland (P25665) | Charles A. Grossmann (P24522) |
| Assistant U.S. Attorney | Attorney for Defendant |
| 600 Church St. | 452 S. Saginaw St., Ste 302 |
| Flint, MI 48502 | Flint, MI 48502 |
| (810) 766-5031 | (810) 232-0553 |
| Email: robert.haviland@usdoj.gov | Email: cgrossmann702@hotmail.com |

_____

**DEFENDANT S**
**MOTION TO DISMISS INDICTMENT**

The Defendant moves to dismiss each and every count of the indictment against

him for the reason that in each count the Government failed to state all the necessary

elements of the crime charged; and it failed to make a sufficient statement of the facts and

circumstances to inform the accused of the specific offense coming under the general

description of the charge.

Concurrence was sought but not obtained on June 8, 2006.

Dated: June 16, 2006                    s/CHARLES A. GROSSMANN
                                        Attorney for Defendant
                                        452 S. Saginaw St., Ste 302
                                        Flint, MI  48502
                                        Telephone: (810) 232-0554
                                        Fax: (810) 232-0553
                                        Email: cgrossmann702@hotmail.com
                                        P24522

Certificate of Service

I hereby certify that on June 16, 2006, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Robert W. Haviland, Assistant United States Attorney

Respectfully submitted,

Dated: June 16, 2006

s/CHARLES A. GROSSMANN
Attorney for Defendant
452 S. Saginaw St., Ste 302
Flint, MI  48502
Telephone: (810) 232-0554
Fax: (810) 232-0553
Email: cgrossmann702@hotmail.com
P24522

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION-FLINT

UNITED STATES OF AMERICA,
                          Plaintiff,              No. 06-20286

                                                  Hon. Paul V. Gadola

CHARLES GARY-DON ABBEY
                          Defendant.
_____

Robert W. Haviland (P25665)              Charles A. Grossmann (P24522)
Assistant U.S. Attorney                  Attorney for Defendant
600 Church St.                           452 S. Saginaw St., Ste 302
Flint, MI 48502                          Flint, MI 48502
(810) 766-5031                           (810) 232-0553
EMail: robert.haviland@usdoj.gov         Email: cgrossmann702@hotmail.com
_____

**BRIEF IN SUPPORT OF DEFENDANT S
MOTION TO DISMISS INDICTMENT**

Prepared by:
Charles A. Grossmann
Attorney for Defendant

**Table of Contents**

Issue Presented..........................................................................................ii

Index of Controlling Authorities.............................................................iii

Argument.....................................................................................................1

    Summary of Argument ...............................................................1

    Standards for Indictments.........................................................2

    Bribery, Counts One and Two ...................................................3

        Specific Transaction.....................................................3

        Intent..............................................................................7

        Value............................................................................10

    Hobbs Act, Count Three..........................................................11

        Something of Value....................................................11

        Deprivation of Property..............................................13

        Under Color of Official Right.....................................14

        Not Entitled to the Property ........................................15

        Intent............................................................................15

Relief Requested......................................................................................17

Certificate of Service...............................................................................17

Attachment (Exhibit A:  Indictment)..................................................18-22

**<u>Issue Presented</u>**

**Each count of the indictment should be dismissed because the Government failed to state all the necessary elements of each crime charged in a clear and unambiguous manner; and the Government failed to make a sufficient statement of the facts and circumstances to inform the accused of the specific charges coming under the general description of the charges.**

## Index Controlling Authorities

**Cases:**

*Evans v. United States,* 504 U.S. 255, 112 S.Ct. 1881,
119 L.Ed. 2d 57 (1992) ........................................................................15, 16

*Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887,
41 L.Ed.2d 590 (1974)...............................................................................2

*Morissette v U.S.,* 342 U.S. 246 (1952)....................................................7, 16

*Russell v U.S.,* 369 U.s. 749, 765, 82 S.Ct. 1038,1047 (1962)................3,10

*Scheidler v. National Organization For Women, Inc.,* 537 U.S. 393,
123 S.Ct. 1057 (2003) ........................................................................11, 13

*U.S. Bowker, 372 F.3d 365* (6th Cir. 2004)....................................................3

*U.S. v Harding* , 563 F.2d 299, 305, 306 (6th Cir. 1977)  .........................14

*United States v. Middleton,* 246 F.3d 825, 841 (6th Cir.2001)...................2, 3

*U. S. v. Kraig,* 99 F.3d 1361, 1368 (6thCir. 1996). .....................................9

*U.S v Mills,* 140 F3d 630 (6th Cir 1998).......................................................6

*United States v. Sun-Diamond Growers of California,* 526 U.S. 398, 119 S.Ct. 1402
(1999).....................................................................................................3-5, 7, 9

*United States v. Saadey*, 393 F.3d 669 (6TH Cir.2005)..........................9, 14

*U.S. v. Titterington,* 374 F.3d 453, 456 (6th Cir. 2004)...................................2

**Statutes:**

18 U.S.C. §201(c)(1)(A)........................................................................3-5

18 U.S.C.  §201(b)(2)............................................................................6

18 U.S.C. §666....................................................................................3-5

18 U.S.C. §1951...................................................................................11

**ARGUMENT**

**<u>Summary of Argument</u>**

An indictment should not be an exercise in tactical minimalism.  It has to contain all the elements of the crimes charged.  Mr. Abbey is charged with bribery and extortion. Case law has identified elements of those charges that the Government will have to prove.  The elements are not made clear from the bare language of the statutes, and in this case the Government has not included all the necessary elements in the indictment against Mr. Abbey.   Further, the Government has not stated in the indictment sufficient facts and circumstances to properly inform Mr. Abbey of the specific offenses he is accused of committing. In the bribery counts, One and Two, the indictment fails to (1) state the specific transaction of the City of Burton that was linked to the thing received, (2) it does not state the necessary element of intent, and (3) it does not define "value".   In the extortion count, Three, the Government fails to state (1) whether the property received was "something of value" including a definition of value, (2) whether somebody was deprived of something, (3) a description of how being a city employee induced payment, (4) that Mr. Abbey was not entitled to the property received, and (5) the necessary element of intent.   As a result all three counts in the indictment against Mr. Abbey should be dismissed.

What follows is a discussion of first the standards for an indictment, and then the ways in which this indictment (Exhibit A) fails.

1

## Standards for Indictments

In *U.S. v. Titterington,* 374 F.3d 453, 456 (6th Cir. 2004) the requirements for

indictments were stated:

> "In federal court, a criminal defendant "shall [not] be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," U.S. Const. amend. V, and the defendant "shall enjoy the right ··· to be informed of the nature and cause of the accusation," U.S. Const. amend. VI. Consistent with these constitutional commands, Rule 7(c)(1) of the Federal Rules of Criminal Procedure says that an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment complies with all of these requirements, the Supreme Court has held, if it (1) "contains the elements of the offense charged," (2) "fairly informs a defendant of the charge against which he must defend" and (3) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)."

Merely using the language of the statute in an indictment will not always meet the

requirements for a proper indictment.  An indictment may be sufficient "if it states the

offense using the words of the statute itself, *as long as the statute fully and*

*unambiguously states all the elements of the offense*." United States v. Middleton, 246

F.3d 825, 841 (6th Cir.2001), (quoting *United States v. Monus,* 128 F.3d 376, 388 (6th

Cir.1997)). (Emphasis added)

In addition to stating all the elements in the indictment "it must be accompanied

with such a statement of the facts and circumstances as will inform the accused of the

specific offense, coming under the general description, with which he is charged."

*Hamling,* 418 U.S. at 117-18, 94 S.Ct. 2887 (internal quotation marks and citation

omitted). ' "To be legally sufficient, the indictment must assert facts which in law

constitute an offense; and which, if proved, would establish prima facie the defendant's

commission of that crime." (quoting *United States v. Superior Growers Supply, Inc.,* 982 F.2d 173, 177 (6th Cir.1992))." *U.S. Bowker, 372 F.3d 365* (2004). "It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,-it must descend to particulars. (Internal quotation marks and citations omitted) *Russell v U.S.,* 369 U.s. 749, 765, 82 S.Ct. 1038,1047 (1962).

Applying the above standards, the indictment against Mr. Abbey falls short in both Counts One and Two regarding bribery, and Count Three under the Hobbs Act.

### Bribery, Counts One and Two

**Specific Transaction:**

The Government in charging Mr. Abbey has used language from the bribery statute, 18 U.S.C §666; but that language does not "fully and unambiguously state[s] all the elements of the offense." *Middleton,* Supra. The indictment fails to recite the particular specific transactions or business of the local government linked to the alleged "thing of value" Mr. Abbey received. That is an element of the crime not fully and unambiguously stated in neither the statute nor the indictment.

The requirement for the specific transaction to be included in a bribery indictment was explained in *United States v. Sun-Diamond Growers of California,* 526 U.S. 398, 119 S.Ct. 1402 (1999). Justice Scalia analyzed 18 U.S.C. §201(c)(1)(A) in *Sun-Diamond* delivering a unanimous Supreme Court opinion requiring the particular act linked to the

3

thing of value received be specified. The language of §201(c)(1)(A)[1] is very close to the language of 18 U.S.C. §666[2].     Both statutes prohibit the taking and giving of "anything of value".  §201(c)(1)(A) prohibits it from being given to a "public official" and §666 prohibits it from being given to "an agent of ...local...government".  In §666 the intent was that they were "to be influenced" by the thing of value given or received; §201(c)(1)(A) requires the gratuity be given or accepted "for or because of" an official act. *Id* at 404.   In §201(c)(1)(A) the prohibited purpose was "any official act performed or to be performed by such public official"; and in §666 the prohibited purpose was, "in connection with any business, transaction, or series of transactions of such...government..."  (§666 has the added requirement that the local government transaction be of "$5,000.00 or more")  Because of the similarities in the two statutes, the principles and reasoning of *Sun-Diamond* would also apply to §666.

In *Sun-Diamond* the Court held the, "Government must prove a link between a the thing of value conferred on the public official and a *specific* "official act" for or because of which it was given." *Id* at 414. (Emphasis added)  The Court reasoned that to not

---

[1] §201(c)(1)(A) and  (B) state "(c) Whoever (1) otherwise than as provided by law for the proper discharge of official duty (A) directly or indirectly gives, offers, or promises anything of value to any public official, former public official, or person selected to be a public official, or person selected to be a public official, for or because of any official act performed or to be performed by such public official, former public official, or person selected to be a public official; (B) [being a public official] otherwise than as provided by law for the proper discharge of official duty, directly or indirectly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of any official act performed or to be performed by such official or person;. . . shall be fined under this title or imprisoned for not more than two years."

[2] §666 states: "(a) Whoever, if the circumstances described in subsection (b) of the section exists (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof. . . (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; or (2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;"

4

require the thing of value to be linked to "particular official acts" and just to the person's office would be contrary to the "numerous other regulations and statutes littering this field" where "precisely targeted prohibitions are commonplace". *Id* at 412.  The Court also discussed some common examples of gratuities given and pointed out that, "When, however, no *particular* official act need be identified, and the giving of gifts by reason of the recipients mere tenure in office constitutes a violation, nothing but the Government's discretion prevents the foregoing examples from being prosecuted." (Emphasis added)

Further, in *Sun-Diamond* the Court analyzed §201(c)(1)(A), which prohibited illegal gratuities, in relation with §201(b)(2)[3] that prohibits bribery.   §201(b)(2), the bribery statute, is even more similar to §666 in that both require an intent "to be influenced".  The Court observed that §201(b)(2), the bribery statute, required a "connection between respondent's intent and a *specific* official act". *Id* at 405. (Emphasis added).   Saying also, ". . . for bribery there must be a *quid pro quo*-a specific intent to give or receive something of value *in exchange* for an official act."  *Id* at 404, 405.

Lastly, in *Sun-Diamond* the Court did not rule on the sufficiency of the indictment that failed to specify an "official act" because that issue was not before it.  But the Court sent a warning for future bribery indictments that do not include the specific transaction by saying, "Our decision today *casts doubt upon* the lower courts' resolution of respondent's challenge to *the sufficiency of the indictment. . .*  (Emphasis added) *Id* at 405.

---

[3] §201(b)(2) states: "(b) Whoever (2) being a public official or person selected to be a public official, directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for: (A) being influenced in the performance of any official act: (B) being influenced to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or (C) being induced to do or omit to do any act in violation of the official duty of such official or person."

§666 also requires a value component for the transactions or business to be influenced of "$5000 or more". *U.S. v Mills,* 140 F3d 630 (6th Cir 1998).  It is fair to conclude that in a city the size of Burton its general business of being a city involves value of greater than $5,000; and any employee involved with city business is therefore its agent involved with that general business which is greater than $5,000.  If the indictment is not required to specify a particular transaction, then §666 becomes a charge based on merely the defendant's status as an employee. Congress' requirement of the $5,000 value element is ignored.  That $5,000 threshold is a crucial element of the statute intended by Congress to keep the federal judiciary from being too meddlesome in local state government. *Id* at 632.  If a specific transaction or series of specific transactions were not an element required to be in the indictment, then every city employee who received the slightest gift from a resident could be charged in federal court with receiving it because of his generalized work on city business.  To make the $5,000 threshold meaningful, and to keep the federal government out of the minutia of State and local government, a specific transaction or particular business of the City must be identified and alleged that it was worth $5,000 or more.

In Mr. Abbey's case the indictment only alleges in both Count One and Count Two that he was given or received a thing of value  "in connection with past and future transactions of the City of Burton involving value of $5000 or more."  In light of *Sun-Diamond s* reasoning and the $5,000 threshold the Government is required to state the particular or specific transactions of the City of Burton to which Mr. Abbey was to have allegedly influenced as the quid pro quo for the thing of value he received.  It is undisputed that Mr. Abbey works for the City of Burton and was constantly involved in

6

City business.  The indictment, as it now stands, accuses Mr. Abbey of violating the statute, or agreeing to violate the statute, merely because of his status as a city employee in a city that does $5,000 worth of business.   That is precisely what *Sun-Diamond* sought to prevent, and it is contrary to the requirement of a transaction of $5,000 or more must be involved.  The Counts One and Two of the indictment against Mr. Abbey fail because they do not specify the particular transaction or business with a value of $5,000 or more linked to the thing of value Mr. Abbey supposedly received.

Also, by failing to specify the particular transaction the indictment fails to give sufficient facts to fairly inform Mr. Abbey of the charges to which he is to defend.  Mr. Abbey has not been informed which transaction he is accused of being bribed to influence so that he may determine if that transaction did in fact have a value of $5,000 or more, or if it was connected with the "anything of value".

**Intent**

Counts One and Two of the indictment regarding bribery further fail because they do not designate the requisite element of scienter.  They do not allege that Mr. Abbey knowingly and purposely received something of value by his receipt of the property, lot 239 of Maplewood Meadows, that he specifically intended it to be his reward for influencing a specific City of Burton business, and that he intended to enter into an agreement to influence past or future specific City business.

As the *Sun-Diamond* Court said about the very similar bribery prohibition in §201(b)(2), there must be ". . .a specific intent to give or receive something of value *in exchange* for an official act." *Id* at 404, 405.  See the legendary (especially locally) case of *Morissette v U.S.,* 342 U.S. 246 (1952) where the defendant admittedly took shell

7

casings off government land and the statute prohibited the taking.   Nonetheless, the Government was required to also prove the defendant's criminal intent as an element of the offense.  Morissette had claimed that he thought the casings were abandoned.

In the present case the Government alleges that Mr. Abbey received property (i.e. the deed to lot 239) and that it had value, much like in the Government in *Morissette* merely alleged the defendant intentionally took the casings.  But, as in *Morissette* where the Court determined the Government also had to prove the defendant knew the shells were not abandoned, it likewise has to prove in this case Mr. Abbey *knew* what he received was "a thing of value".

That may seem to be an unnecessary requirement of the indictment, but this case will illustrate its importance.  The Government is well aware that the title transferred by the quitclaim deed to lot 239 referenced in the indictment was encumbered by unpaid taxes and assessments.  It is aware that Mr. Abbey had to pay thousands of dollars to clear the title.  Further, the Government is aware Mr. Abbey claims he paid significant money to fill in the lot to make it useable.  The Government is also aware that Mr. Abbey claims the State Equalized Value (SEV) for the lot was a factor that demonstrated a value for the lot at that time that comported with what he had to pay, or less.  Thus, for the Government to merely state the deed to the lot was a "thing of value" does not address whether Mr. Abbey knew it was a thing of value to him.  In other words, the Government has to prove not just what the value of the lot was, and that value was over what Mr. Abbey paid, it also must prove Mr. Abbey had *knowledge* that the deed had value over what he had to pay.

The requirement of those criminal intent elements are necessary to prevent the prosecution at the Government's sole discretion of many innocent acts not intended to be prohibited.  If the Government did not have to prove that the Defendant had knowledge of excess value then every purchase by an official with his own funds would be a receipt of "a thing of value" subjecting him to prosecution.

Even if the Government was able to prove Mr. Abbey knew the deed to the lot had value over what he paid, it must still prove he knew the excess value was in exchange for his influence in specific City business.  That is the specific intent described in *Sun-Diamond, Supra.* at 404, 405.  Without that element, every favorable deal a public worker was able to negotiate for his personal purchase of anything from cars to road-side corn could be subject to a claim that his buying acumen was actually in return for his influence at the agency that employees him.

In particular to Count One, conspiracy, intent is paramount.  "The essential elements of a conspiracy are: (1) the conspiracy described in the indictment was *willfully* formed, and was existing at or about the time alleged; (2) that the accused *willfully* became a member of the conspiracy; (3) that one of the conspirators thereafter *knowingly* committed at least one overt act charged in the indictment at or about the time and place alleged; and (4) that such overt act was *knowingly* done in furtherance of some object or purpose of the conspiracy as charged." (Emphasis Added)  U. S. v. Kraig, 99 F.3d 1361, 1368 (6thCir. 1996).  Further,  "the government must prove that [the defendant] *intended* to further an endeavor which, if completed, would satisfy *all the elements* of a substantive criminal offense....."  (Internal quotation marks omitted) (Emphasis added) *United States v. Saadey*, 393 F.3d 669, 676 (6TH Cir. 2005).  The intent to do an endeavor to do "all the

elements" of the crime is important regarding the specific transaction of the City that the Government must allege was to be influenced.  For conspiracy the Government does not have to prove any City business was actually influenced; but it does have to prove a specific transaction was intended to be influenced because the requirement for a specific transaction is an element of the offense.

The indictment had to state that Mr. Abbey received the deed knowing it had value in excess of the monies he paid to make the lot useable, and that Mr. Abbey took the deed knowing that excess value was intended to reward or influence him in connection with a specific transaction.  For conspiracy the Government must prove that he intended to enter into an agreement to influence a specific transaction of the City, and therefore it needed to identify in the indictment that specific transaction that had a value of $5,000 or more. But those elements of criminal intent were not presented to the grand jury when it signed the indictment and were not included in the indictment.  Thus, Counts One and Two fail for those reasons.

**Value**

Value is a necessary element of the bribery statute where it says "thing of value" and "anything of value of $5,000 or more".  But the word "value" is a generic term.  As a generic term the Government was obligated in the indictment to, "state the species,-it must descend to particulars" _Russell_, 369 U.S. at 749.

In this case it cannot be determined how the Government defines value.  Does it mean the market value of the deed or lot Mr. Abbey received, or the auction value, or are they claiming the deed had some kind of generic value because of the parchment it was written on, or is it claiming the lot or deed had sentimental value particular to Mr.

10

Abbey?  Is the Government claiming a value above the amount that Mr. Abbey paid to clear title or to make the lot useable, or is the Government saying the amount he paid determined the lot's value?  In regards to the business of Burton that the Government claims was to be influenced, if the Government were to specify that business, how does it place a value on it?  For example, if a building inspector is bribed to overlook a missing handrail, is the value of the City business the value of the handrail, the value of the house, the value of the taxes the City receives on the house, or some other value?

Because the Government failed to state particulars as to what it means by "value", the defense is not fairly informed so as to defend against the Government's claim of "value".

### Hobbs Act, Count Three

#### Something of Value:

Count Three under the Hobbs Act the Government merely recites statutory language from 18 U.S.C. 1951[4].  That language does not sufficiently designate all the elements to the crime charge.  Thereby making the indictment fail for several reasons. The first reason is the indictment's failure to address that not only must property be obtained; it must be property of value.

In *Scheidler v. National Organization For Women, Inc.,* 537 U.S. 393, 123 S.Ct. 1057 (2003),  Chief Justice Rehnquist, writing for the majority in a 6-3 decision,

---

[4] §1951 states: "(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.  (b) As used in this section  . . . (2) the term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

examined the Hobbs Act.  The case involved a claim by the Respondents, NOW, that organized antiabortion protesters violated the Hobbs Act by denying or interfering with women's rights to abortions and the clinics' right to do business.  The Court noted that the Hobbs Act, being a criminal statute, ". . .it must be strictly construed, and any ambiguity must be resolved in favor of lenity." *Id* at 408, 409.  The Court examined the common law stating, "At common law, extortion was a property offense committed by a public official who took "any money or thing of value" that was not due to him under the pretense that he was entitled to such property by virtue of his office. (Citations omitted) ." *Id* at 402.   In holding against the Petitioner's claim the Court said, "Petitioners neither pursued nor received "something of value from" respondents that they could exercise, transfer, or sell.  *United States v. Nardello*, 393 U.S. 286, 290, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969)." *Id* at 404.

Thus, the Hobbs Act requires the element that the accused received "something of value".  An indictment that alleges merely that "property" was received is insufficient because not all property is something of value.

As Mr. Abbey's case illustrates, a person might receive property that he had to pay for it to be useable.  But, the mere receipt of the property is irrelevant unless it is proven that it had value over what was paid.

Also as a part of this issue, and as argued above, the Government not only has to state the property received had value; it has to define what it means by "value".

The indictment against Mr. Abbey fails to recite the necessary element that the property he received was "something of value ...that [he] could exercise, transfer, or sell." *Id* at 404.

**Deprivation of Property:**

*Scheidler v. National Organization For Women, Inc., Supra.* the Court said the about the New York statute from which the Hobbs Act was based, "We too have recognized that the "obtaining" requirement of extortion under New York law entailed both a deprivation and acquisition of property. Mostly importantly, we have construed the extortion provision of the Hobbs Act at issue in these cases to require not only the *deprivation* but also the acquisition *of property*. (Citations omitted)" (Emphasis added) *Id* at 404.

Pursuant to *Scheidler*, the deprivation of property from somebody by the accused is a necessary element of a Hobbs Act violation.

Mr. Abbey was charged in the Count Three with obtaining property, but there is no mention that anybody was deprived of property.  At first this argument may seem counter-intuitive, if somebody received something then somebody must have lost something is one's first reaction.  But, "one man's junk is another's treasure."   The quitclaim deed Mr. Abbey received was encumbered, the land had not sold, and was to be lost to the county for unpaid taxes.  Mr. Abbey claims he had to pay substantial funds to keep it from being lost and to make it useable.  Further in Count One it is claimed Mr. Rizzo signed a quitclaim deed to the property on June 4, 2001, to Amanda Spangler; and Ms Spangler signed another quitclaim deed to Mr. Abbey 4 1/2 months later, without any mention of when the deed was transferred to Mr. Abbey.   There is no allegation in Count Three that either Mr. Rizzo or Ms Spangler were deprived of something of value to them or anybody else (or was it their "junk" to use the above metaphor) whenever Mr. Abbey obtained the quitclaim deed.   Even if the Government were able to prove the deed had

some value to Mr. Abbey (i.e. if it was his "treasure") without an allegation of somebody being deprived of something, then one of the necessary elements to the charge that has to be proven is missing from the indictment.

**Under Color of Official Right**

The indictment relies on the statutory language to supply the necessary element of coercion in the indictment by stating merely ". . . ,under color of his official right as City Administrator,. . ."

The coercion element of the Hobbs Act regarding public officials was explained in *U.S. v Harding* , 563 F.2d 299, 305, 306 (6th Cir. 1977)  endorsing a 3rd Circuit case saying " (a)ny element of coercion that may be required to establish extortion under the Hobbs Act is supplied by the misuse of the defendant's *official* power." (Emphasis added)  When the public employee does not actually have official power the 6th Circuit has said, "the Hobbs Act reaches those public employees who may lack the actual power to bring about official action, but create the reasonable impression that they do possess such power and seek to exploit that impression."  *United States v. Saadey*, 393 F.3d 669 (6th Cir. 2005).

In this case the Government does not clearly and unambiguously state the coercion element it has to prove.  It is not stated if Mr. Abbey actually had official power, or if he is being accused of creating a reasonable impression that he possessed such power to whoever was supposedly induced by that impression to transfer the quitclaim deed.  The indictment does not describe what power Mr. Abbey actually had, or that he gave the impression that he had, to the alleged victim.  It is not even clear from the indictment who the victim was supposed to be: Rizzo, Spangler, both, or somebody else?

Other than saying Mr. Abbey had some type of title with the City of Burton, the indictment is clueless as to how he allegedly induced anybody, whoever it was, to give him anything by being an employee at Burton.  The indictment falls far short of an unambiguous statement of the element of Mr. Abbey's official power, or enough of a statement of the facts and circumstances to inform him of the specific offense he is to defend against.

**Not Entitled to the Property**

The Supreme Court in *Evans v. United States,* 504 U.S. 255, 112 S.Ct. 1881, 119 L.Ed. 2d 57 (1992)  addressed whether the Hobbs Act required that a public official had to demand a payment said: "We hold today that the Government need only show that a public official has obtained a payment *to which he was not entitled*, knowing that the payment was made in return for official acts." *Id* at 268 (Emphasis added).   An element The Government must prove is that the property a defendant received must be property that he was not entitled to receive.  That seems all the more the case if the property received does not have to be the result of a demand.  Government workers receive property all the time either because of their job, or privately, that they are entitled to receive by purchase, gift, or other reason.  If that element is not included, then any property a City employee receives because of some entitlement could be prosecuted at the Government's discretion.

In Mr. Abbey's indictment the Government made no mention that he was not entitled to the property received and thereby attempts to relieve itself of proving that element.

**Intent**

As with the bribery counts, the indictment fails to mention the requisite criminal intent element necessary to convict. The indictment merely states that between two dates in 2001 Mr. Abbey affected commerce by, ". . . obtaining property from another. . . under color of his official right as City Administrator,. . ." If that is all it takes to state a crime under the Hobbs Act, then every tax or fee collector for a governmental unit violates the Hobbs act.

Criminal intent must obviously be a necessary element. *Morissette v U.S.,* 342 U.S. 246 (1952), which has already been discussed, is the foundation for the requirement of scienter as an element. Particular to the Hobbs Act, *Evans,* 504 U.S. at 268 is quoted above; it is the second half of the *Evans* quote that clearly demonstrates the necessary element of criminal intent where it says, ". . . the government must prove that the public official obtained payment to which he was not entitled, *knowing that the payment was made in return for official acts*." (Emphasis added)

Under the principles of *Morissette* and *Evans*, the government first has to prove the accused knew he was getting something of value. That may be a crucial element in this case. For there to be extortion the defendant also has to also know he was depriving somebody of something; as opposed to believing he was obtaining something he thought the other person did not want in any event. The Government has to prove that Mr. Abbey knew what he received was in return some official power he had or intentionally implied he had. And, he has to know that he was not entitled to receive it.

To say the indictment fails in these regards is too generous. To fail implies an attempt. This indictment does not even attempt to describe in anyway the element of intent the government has to prove.

16

**Relief Requested**

The Defendant requests that all three counts be dismissed.

Respectfully submitted

Dated: June 16, 2006                  s/CHARLES A. GROSSMANN
                                      Attorney for Defendant
                                      452 S. Saginaw St., Ste 302
                                      Flint, MI  48502
                                      Telephone: (810) 232-0554
                                      Fax: (810) 232-0553
                                      Email: cgrossmann702@hotmail.com
                                      P24522

Certificate of Service

I hereby certify that on June 16, 2006, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Hon. Paul V. Gadola

Robert W. Haviland, Assistant United States Attorney

Respectfully submitted,

Dated: June 16, 2006                  s/CHARLES A. GROSSMANN
                                      Attorney for Defendant
                                      452 S. Saginaw St., Ste 302
                                      Flint, MI  48502
                                      Telephone: (810) 232-0554
                                      Fax: (810) 232-0553
                                      Email: cgrossmann702@hotmail.com
                                      P24522

17

<u>**Exhibit A**</u>

# ORIGINAL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION-FLINT

UNITED STATES OF AMERICA,
    Plaintiff

v.
                                       NO. 0 6 - 20286

                                       HON. PAUL V. GADOLA

CHARLES GARY-DON ABBEY,
    Defendant.

## <u>INDICTMENT</u>

THE GRAND JURY CHARGES:

## <u>COUNT ONE</u>

[conspiracy to bribe a public official; 18 U.S.C. §§ 371 and 666(a)(2)]

That from about May 2001 until about October 16, 2001, in the

Eastern District of Michigan, CHARLES GARY-DON ABBEY and Louis

Albert-Blake Rizzo conspired and agreed with each other, and with other

persons, to commit an offense against the United States, that is, to give a

thing of value to an agent of a local government which received in the year

2001 Federal assistance benefits in excess of $10,000, with intent to

influence and reward said agent in connection with business of such

government involving anything of value of at least $5,000,' in violation of

Section 666(a)(2).

18

It was part said conspiracy that Louis Albert-Blake Rizzo would give to CHARLES GARY-DON ABBEY, the City Administrator of Burton, Michigan, a government that received in excess of $10,000 under a Federal assistance program during the year 2001, real property described as lot 239 of Maplewood Meadows No.4 in Burton, Michigan, commonly known as 4260 Meadows Avenue, Grand Blanc, Michigan, with intent to reward and influence CHARLES GARY-DON ABBEY in connection with past and future business transactions of the City of Burton involving a value of $5000 or more.

It was further part of said conspiracy that CHARLES GARY-DON ABBEY and Louis Albert-Blake Rizzo would cause the deed to this real property to be transferred to CHARLES GARY -DON ABBEY through a third person, in order to avoid public knowledge of the fact that it was being given with intent to .reward and influence CHARLES GARY -DON ABBEY in connection with past and future business transactions of the City of Burton.

In furtherance of said conspiracy, and to effect the objects thereof, the co-conspirators performed the following overt acts, among others:

a) on or about June 4, 2001, Louis Albert-Blake Rizzo, as President of New Life Residential LLC, signed a Quit Claim Deed transferring lot 239 of

19

Maplewood Meadows No.4 to Amanda Wilcox Spangler an employee of Louis Albert-Blake Rizzo;

b) on or about October 16, 2001  Louis Albert-Blake Rizzo caused his employee Amanda Wilcox Spangler to sign a Quit Claim Deed transferring lot 239 of Maple wood Meadows No.4 to CHARLES G. ABBEY and Ann M. Abbey, his wife, and, thereafter, to deliver said Quit Claim Deed to Ann M. Abbey.

The conspiracy described above was all in violation of Section 371 of Title 18, United States Code.

## COUNT TWO

[solicitation of bribe by public official; 18 U.S.C. § 666(a)(I)]

That from about May 2001 until about October 16, 2001, in the Eastern District of Michigan, CHARLES G. ABBEY, being an agent of a local government, that is, the City Administrator of Burton, Michigan, a government that received in excess of $1 0,000 during the year 2001 under a Federal assistance program, corruptly solicited, demanded, and accepted a thing of value, that is, a deed to lot 239 of Maple wood Meadows No.4 in Burton, Michigan, commonly known as 4260 Meadows Avenue, Grand Blanc, Michigan, intending to be rewarded and influenced in connection

20

with business transactions of the City of Burton involving a value of $5000

or more, in violation of Section 666(a)(1) of Title 18, United States Code.

## **COUNT THREE**

[extortion by public official; 18 U .S.C. § 1951]

That from about May 2001 until about October 16, 2001, in the

Eastern District of Michigan, CHARLES G. ABBEY, who was then the City

Administrator of Burton, Michigan, affected commerce by obtaining

property from another, specifically, the deed to lot 239 of Maple wood

Meadows No.4, Burton, Michigan, commonly known as 4260 Meadows

A venue, Grand Blanc, Michigan, under color of his official right as City

Administrator, all in violation of Section 1951 of Title 18, United States

Code.


**THIS IS A TRUE BILL.**

Dated: May 24, 2006                    s/Grand Jury Foreperson


STEPHEN  J.  MURPHY
United States Attorney

s/ ROBERT W. HAVILAND (P25665)
Assistant United States Attorney
600 Church Street
Flint, MI 48502
(810) 766.5031
E-Mail: robert.haviland@usdoj.gov