UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION-FLINT

UNITED STATES OF AMERICA,

                Plaintiff,        No. 06-20286

vs.                              Hon. Paul V. Gadola

CHARLES GARY-DON ABBEY

                Defendant.

_____

| | |
|---|---|
| Robert W. Haviland (P25665) | Charles A. Grossmann (P24522) |
| Assistant U.S. Attorney | Attorney for Defendant |
| 600 Church St. | 452 S. Saginaw St., Ste 302 |
| Flint, MI 48502 | Flint, MI 48502 |
| (810) 766-5031 | (810) 232-0553 |
| Email: robert.haviland@usdoj.gov | Email: cgrossmann702@hotmail.com |

_____

**Defendant's Motion For Bill of Particulars**

The Defendant moves this court to order the Government to an answer the following requests with a written statement in detail of the particulars of the facts and elements alleged in the indictment against the defendant:

    1.    Regarding Counts One and Two and the phrase "thing of

value", or "value of $5,000" designate what is the definition of "value" the Government uses to conclude the thing had value, or the business had value of $5,000 or more.

2. Regarding Counts One and Two and the phrase "thing of value", or "value of $5,000 or more" designate how the Government determine the "value" as the Government defines that word, including a description of how data was collected, what data was collected, which of the data collected was used, and what accepted principles and methodology were applied by the Government to the data it used to determine the thing had value.

3. Regarding Counts One and Two and the phrase "thing of value" designate what the Government is claiming the Defendant knew the value to be of the thing?

4. Regarding Count One and the phrase "past and future business transactions of the City of Burton in involving a value of $5000 or more." designate the specific transactions to which the Government refers that Mr. Abbey was allegedly to be rewarded for or to influenced, and how the Government determined the "value" of each specific transaction?

5.  Regarding Count Two and the phrase "business transactions of the City of Burton involving a value of $5000 or more." that Mr. Abbey was allegedly "intending to be rewarded and influenced in connection with", designate the specific transactions to which the Government refers and how the Government determined the "value" of each of said transactions?

6.  Regarding Counts One, Two, and Three and the phrase "the City Administrator of Burton", designate what the Government claims was the authority and power of Mr. Abbey over Burton business transactions, regardless of whether "City Administrator" was his title, in the City of Burton during the pertinent times charged in the indictment.

7.  Regarding Count Three, designate what powers and authority over Burton business the Government claims the Defendant gave the reasonable impression he had, and to whom, that are different than the powers and authority identified in answer to inquiry 6 above.

8.  Regarding Count Three, designate the official acts that the Government is claiming the Defendant knowingly had the power and authority to do or not do, or that the Defendant intentionally gave the

impression he had, that he knowingly used to induce somebody to give him something of value to which he knew he was not entitled.

9. Regarding Count One, designate when was physical possession and control of the "Quit Claim Deed" claimed to have been signed by Louis Albert-Blake Rizzo on June 4, 2001, transferred from Mr. Rizzo to another person or persons, and the name of the person or persons to who it was transferred.

10. Regarding Count One, designate what was the date Amanda Wilcox Spangle acknowledged that deed before a notary public that the Government claims she signed on or about October 16, 2001.

11. Regarding Count One, designate when and to what location did Amanda Spangler deliver the Quit Claim Deed to Ann M. Abbey as alleged.

12. Regarding Counts One and Two specify the "federal assistance benefits" received by the City of Burton in the year 2001, including the dates received and the amounts.

Concurrence was sought on June 8, 2006, from Assistant United States Attorney Robert Haviland, but it was not given in anticipation of discovery material to be provided.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: | s/CHARLES A. GROSSMANN<br>Attorney for Defendant<br>452 S. Saginaw St., Ste 302<br>Flint, MI  48502<br>Telephone: (810) 232-0554<br>Fax: (810) 232-0553<br>Email: cgrossmann702@hotmail.com<br>P24522 |

## BRIEF IN SUPPORT OF MOTION

Also before this court is, or will be, the Defendant's motion to dismiss the indictment.  Therefore, at the outset, it should be noted that the Court's ruling on this request for a bill of particulars should have no effect on the Defendant's motion to dismiss the indictment.  A bill of particulars cannot cure an invalid indictment. <u>Russell v. U.S., 369 U.S. 749, 770, 82 S.Ct 1038, 1050 (1962).</u>

This motion is made pursuant to Rule 7(f) allowing the Defendant to move for a bill of particulars within 10 days of arraignment.  The Defendant was arraigned on June 8, 2006.

The bill of particulars requested focus on the following areas: (1) value, (2) business transaction to be influenced, (3) the color of title claimed to have been used, and (3) the dates of transfer of property.

**Value: Questions 1-3**

"Value" is a component to three elements in Counts One and Two of the indictment. Those are the bribery counts. The government must prove (1) the City of Burton received more than $10,000 from federal assistance benefits, (2) Mr. Abbey received or conspired to receive "a thing of value" in connection with (3) business of the City involving "anything of value" of at least $5,000.

"Value" is not a precise legal term. It is not defined in the statute. It is a generic term and as such the Government was required to plead sufficient facts in the indictment to clarify what it meant, *Id* at 765. As to the first component of the "Federal assistance benefits" it might fairly be inferred that is cash assistance, but for the other two value components the meaning of value is not clear.

The second component regarding a "thing of value" is problematic. It involves, in Count One, lot 239 of Maplewood Meadows No. 4; and, in Count Two, it involves the quitclaim deed to lot 239. As the Government is aware, the title to the lot when Mr. Abbey received the quitclaim deed to it was encumbered with liens for unpaid taxes and assessments that Mr. Abbey paid off to clear the title; further, the lot was in an unusually low location and next to power lines. There are definitions of value that are used

commonly in real estate, but it is unknown which, if any of those definitions, the Government means by the word "value" and how that definition relates to the what Mr. Abbey had to pay to clear the title to use the property. It is unknown if the Government is referring to market value, an auction value, a cost value, or sentimental value to a particular individual.

If the defense is to be able to dispute what the value was of the thing (be it either the lot or the deed) received by Mr. Abbey over what he paid, then the Defendant has to know how the Government defines that word. The defense has to first determine if the definition the Government is using is proper, and then it has to determine if the Government properly determined "value" by the definition it is using.

Further, the defense must know what principles and methodologies used by the Government to gather data and used to then conclude from that data a value, as it defines value. For example, it is unknown what all the data is that the government or its agents reviewed regarding value of the lot so that it can be compared to the information the Government intends to present to the jury to prove value. The Government cannot ignore exculpatory data; it cannot cherry pick its information to get the results it desires. Thus, it has to disclose not only the data it used, but also its

methods in picking that data to determine if it was an accepted method or if it was a method that would slant the results.

Further, it is unknown how the Government determined the business of the City had a value of $5,000 or more.  Not knowing a specific transaction is the first impediment to this determination, but after that it is unknown how value of whatever transaction it refers was determined.

The last part of the value element is what the Government is claiming Mr. Abbey knew the value to be.  People often have things in their attic that have value far greater than what they believed.  What is not known in this matter is whether the Government is claiming Mr. Abbey had knowledge of the value as it has determined that value, or is it saying Mr. Abbey had knowledge of some other value, or is the Government saying it did not matter what Mr. Abbey believed?

**Business Transactions: Questions 5, 6**

These two questions are requesting the Government designate exactly what transaction it is claiming Mr. Abbey did or was supposed to have influenced.  Bribery requires a quid pro quo for the "thing of value received".  Because Mr. Abbey was a City of Burton employee involved with the general business of the City, it is crucial to his defense that he know which specific piece of City business it is being claimed that he influenced.

### Color of Official Title: Questions 7-9

The Government implies by charging under the Hobbs Act that it claims that Mr. Abbey extorted property because of the powers his office provided him, or that he gave somebody the reasonable impression that he had. The trouble is that the Government only identifies a title it claims Mr. Abbey held at the City. It does not state what powers Mr. Abbey actually had, it does not state what powers Mr. Abbey reasonably implied he had, or to whom that implication was made. If he did not actually have any power to do or prevent some City action, or if he did not imply he had any power, or even if implied it would not have been reasonable to believe he had that power, then he could not have coerced whomever the Government says was coerced into giving him property.

### Dates: Questions 10-12

The Government references the dates that it claims quitclaim deeds were signed to designate when the alleged offenses took place. It says the offenses occurred from May 2001, in reference to the quitclaim deed it says Mr. Rizzo signed on June 4, 2001, to October 16, 2001, which is the date it claims Amanda Spangler signed the quitclaim deed to Mr. Abbey. The charges involve claims that Mr. Abbey demanded or accepted or agreed to receive the real property that is described in those deeds between the dates

specified. For the bribery counts One and Two the Government references the same year as those dates, 2001, as the year Burton received over $10,000 of federal assistance. The problem is that the Government does not designate when those deeds were physically transferred to anybody or recorded.

Anybody could sign any number of deeds and leave them in their drawer without giving them to the grantee or recording them. Those deeds have no legal effect. If the grantor's office burned along with the deeds in the drawer, the property did not transfer. Thus, the Government fails to state the most important dates regarding the actual transfer of the property.

                                            Respectfully submitted,

Dated:                            s/CHARLES A. GROSSMANN
                                      Attorney for Defendant
                                      452 S. Saginaw St., Ste 302
                                      Flint, MI  48502
                                      Telephone: (810) 232-0554
                                      Fax: (810) 232-0553
                                      Email: cgrossmann702@hotmail.com
                                      P24522

Certificate of Service

I hereby certify that on June  , 2006, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Robert W. Haviland, Assistant United States Attorney

Respectfully submitted,

Dated: June  , 2006              s/CHARLES A. GROSSMANN
                                  Attorney for Defendant
                                 452 S. Saginaw St., Ste 302
                                 Flint, MI  48502
                                 Telephone: (810) 232-0554
                                 Fax: (810) 232-0553
                                 Email: cgrossmann702@hotmail.com
                                 P24522