UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,        No.  06-20286

v.

                 HON. PAUL V. GADOLA

CHARLES GARY-DON ABBEY,
    Defendant.
                /

## RESPONSE TO MOTION TO DISMISS INDICTMENT

For the reasons stated in the brief filed herewith, the United States opposes defendant's motion to dismiss the indictment.

                 STEPHEN J. MURPHY
                 United States Attorney

Dated: June 27, 2006       s/ ROBERT W. HAVILAND (P25665)
                 Assistant U. S. Attorney
                 600 Church Street
                 Flint, MI  48502    (810) 766-5031
                 robert.haviland@usdoj.gov

## BRIEF

### INTRODUCTION

Defendant is the City Administrator of the City of Burton, Michigan.  He has been indicted for three bribery offenses stemming from his acceptance of a free lot in a subdivision of that city.  Count One charges him with conspiring with Louis Albert-

Blake Rizzo to commit the offense of giving the lot to defendant, in violation of 18 USC §§ 371, 666(a)(2); Count Two charges him with soliciting and accepting the lot, in violation of Section 666(a)(1)(B); and Count Three charges him with interfering with commerce by obtaining the lot under color of his official right as City Administrator, in violation of Section 1951.  He has now filed a motion to dismiss all three counts, arguing that they omit essential elements of the crimes charged.

At page 3 of his "Argument" defendant states as follows concerning the first two counts:

> The indictment fails to recite the particular specific transactions or business of the local government linked to the alleged "thing of value" Mr. Abbey received.  That is an element of the crime not fully and unambiguously stated in neither [*sic*] the statute nor the indictment.
>
> The requirement for the specific transaction to be included in a bribery indictment was explained in *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 119 S.Ct. 1402 (1999).

Defendant then spends four pages discussing *Sun-Diamond.*

But *Sun-Diamond* did not involve Section 666 at all.  Rather, it involved the "illegal gratuity" statute governing actions by **federal** officials, 18 U.S.C. § 201(c)(1)(A).  The Court was interpreting the phrase "for or because of any official act" contained in that statute.  No such phrase exists in the statutes at issue in counts one and two of the instant case, 18 USC §§ 666(a)(2) [count one] and 666(a)(1)(B)

[count two]. The Court in *Sun-Diamond* carefully noted that "a narrow, rather than a sweeping, prohibition is more compatible with the fact that § 201(c)(1)(A) is merely one strand of an intricate web of regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials." *Id*. 526 U.S. at 409-410, citing, *inter alia*, 18 USC §§ 203; 205(a)(1); 205(a)(2); 207; 208; 209; and 217. No such web of interrelated statutes exists to complicate the interpretation of Section 666, which governs the actions of state and local officials involved in the administration of federal funds.

Moreover, the Court in *Sun-Diamond* was concerned about *de minimis* gratuities that would become criminal under a broader interpretation, such as a sports jersey or a baseball cap given to federal officials during visits by or to sports teams. No such concern exists in the context of Section 666, which is limited by its terms to bribes "in connection with ... transactions ... involving any thing of value of $5,000 or more." Accordingly, courts have held that *Sun-Diamond* simply does not apply to statutes other than Section 201(c). *See, e.g., United States v. Sawyer*, 239 F.3d 31 (1st Cir.2001) (inapplicable to "honest services" mail fraud charge, 18 USC §§ 1341, 1346); *People v. Gaio*, 97 Cal.Rptr.2d 392, 400-401 (Cal.Ct.App. 2000) ("no compulsion to rule, by analogy to *Sun-Diamond*, that the subject of a bribe under the

California statutes ... must be a specific official act"). Defendant has cited no case applying *Sun-Diamond* to Section 666. Accordingly, defendant's blanket condemnation of counts one and two is erroneous.

## COUNT ONE

The essential elements of all three counts are different, and should be considered separately. There is no dispute that Count One properly charges a conspiracy in violation of Section 371, and includes the essential elements of that offense: 1) an agreement to violate a federal statute; 2) defendant's joinder in that agreement; and 3) at least one overt act in furtherance of the agreement. Defendant does dispute, however, that Count One properly alleges that the object of the conspiracy was in violation of Section 666(a)(2). That section reads in pertinent part as follows:

> [Whoever, if the circumstances of subsection (b) ... exists] corruptly gives ... anything of value to any person, with intent to influence or reward an agent of ... a ... local ... government ...in connection with any business ... of such ... government ... involving anything of value of $5,000 or more [commits an offense against the United States].

The referenced "circumstance of subsection (b)" is "that the ... government ... receives, in any one year period, benefits in excess of $10,000 under a Federal program ....." This statute sets forth four essential elements: 1) corruptly giving

anything of value to any person; 2) with intent to influence or reward an agent of a local government; 3) in connection with business of that government involving more than $5,000; and 4) the receipt by that government of federal benefits in excess of $10,000 in a year.

In the instant case Count One fails to allege that Rizzo gave the lot to Abbey "corruptly," as required by this statute. ("Corruptly" is included in Count Two, but was inadvertently omitted from Count One). Accordingly, the government intends to seek a superseding indictment adding this allegation. Moreover, in order to specify more clearly the "business transactions of the City of Burton" at issue, the government will seek to add the phrase "relating to real estate developments in the City of Burton in which Louis Albert-Blake Rizzo had or would have a financial interest." The superseding indictment should be presented to the grand jury before July 13, 2006, and the government requests the court to delay its decision on defendant's motion for that period to allow consideration of any amendment approved by the grand jury. With such amendments Count One would clearly allege all the required elements of Section 666(a)(2).

*United States v. Jennings*, 160 F.3d 1006 (4th Cir.1998) involved a housing repair contractor convicted under Section 666(a)(2) for bribing an official of a

Baltimore housing agency. The contractor argued that he had only paid gratuities, rather than bribes, and that gratuities are not outlawed by Section 666. The agent testified that he took gifts, not bribes, and that he "never did any special favors for Jennings's companies as a result of the gifts." 160 F.3d at 1012. The Fourth Circuit, however, analogized Section 666 to Section 201's **bribery** provision (§ 201(b), in contrast to the gratuities provision, § 201(c)), and found the evidence sufficient to constitute a bribe:

> To prove bribery under § 201, the government is not required to prove an expressed intention (or agreement) to engage in a quid pro quo. Such an intent may be established by circumstantial evidence. Also, the government need not show that the defendant intended for his payments to be tied to specific official acts (or omissions).
> \* \* \*
> The quid pro quo requirement is satisfied so long as the evidence shows a "course of conduct for favors and gifts flowing to a public official *in exchange for* a pattern of official actions favorable to the donor." Thus, all that must be shown is that payments were made with the intent of securing a specific *type* of official action or favor in return. For example, payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf. This sort of "I'll scratch your back if you scratch mine" arrangement constitutes bribery because the payor made payments with the intent to exchange them for specific official action.
> \* \* \*
> As we explain below ... Jennings's conviction must stand because the evidence was sufficient to prove that he intended to influence Morris's official acts by paying him money, that is, Jennings intended to engage in a quid pro quo. Jennings's intent therefore was sufficiently

corrupt to call his payments "bribes" (or "rewards"). As a result, we need not decide today whether § 666 also covers "gratuities" ....

*Jennings, supra,* 160 F.3d at 1014-15. In *United States v. Quinn*, 359 F.3d 666 (4th Cir.2004), the Fourth Circuit discussed a similar issue in a recent Section 201(b) bribery case, and reaffirmed *Jennings*:

> "An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, ....
>
> \* \* \*
>
> "[F]or bribery there must be a *quid pro quo*, – a specific intent to give or receive something of value *in exchange for* an official act." *United States v. Sun-Diamond Growers of California* .... We have stated that the government is not required in a bribery case to prove "an expressed intention (or agreement) to engage in a quid pro quo." *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir.1998). Nor must the government prove "that the defendant intended for his payments to be tied to specific official acts (or omissions) .... Rather, it is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action." *Id.* In other words, "[t]he quid pro quo requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official *in exchange for* a pattern of official actions favorable to the donor."

*Quinn, supra,* 359 F.3d at 672-73.

At page 7 of his brief, defendant argues that Count One does "not allege that Mr. Abbey ... specifically intended [the lot] to be his reward for influencing a specific City of Burton business, and that he intended to enter into an agreement to influence

7

past or future specific City business." But as to Section 666(a)(2), there is no requirement of such intent on the part of the <u>recipient</u> of the bribe. Rather, the requirement is that the bribe be given "with intent to influence or reward" the government agent. The Fourth Circuit made this distinction clear in *Jennings, supra,* 160 F.3d at 1016-17:

> To begin with, Jennings is mistaken to focus on Morris's testimony that he believed he accepted gifts, not bribes, from Jennings. Under Section 666(a)(2) the intent of the payor, not the intent of the payee, is determinative of whether a crime occurred.
> \* \* \*
> Thus, the only intent at issue was Jennings's: if he gave money to Morris with the requisite corrupt intent, Jennings violated the statute regardless of Morris's intent in accepting the money.

At pages 8-10 of his brief defendant argues that the government "has to prove ... Mr. Abbey *knew* what he received was "a thing of value." This assertion is based on the very dubious authority of *Morrissette v. United States*, 342 U.S. 246 (1952), a decision holding that one could not be convicted of theft of government property if he honestly believed the property had been abandoned. That case is inapplicable to the instant bribery charges, which already include the element that the donor (Count One) or the recipient (Count Two) intended to influence or be influenced by the thing of value. Even if one honestly believes that a bribe is of no value, the statute is violated if it is given or received (respectively) with intent to influence or be

influenced.

The Second Circuit has held the inverse of defendant's argument: that if the defendant subjectively believed he was receiving something of value, defendant could be found guilty even if the bribe was objectively worthless. *United States v. Williams*, 705 F.2d 603, 622-23 (2d Cir.1983); *see also United States v. Crozier*, 987 F.2d 893, 901 (2d Cir.1993). "The phrase 'anything of value' in bribery and related statutes has consistently been given a broad meaning ... to carry out the congressional purpose of punishing misuse of public office." *Williams, supra,* 705 F.2d at 623.

Defendant cites no case holding that the government must allege or prove the defendant's belief that the bribe had actual value, and the government is aware of none, as the such belief is not an element of the offense.

Finally, at pages 10-11 of his brief, defendant argues that the indictment is deficient because it fails to specify "how the Government defines value. Does it mean the market value of the deed or lot ... or the auction value ... or are they claiming the deed had some kind of generic value because of the parchment it was written on, or is it claiming the lot or deed had sentimental value particular to Mr. Abbey?" This argument is frivolous. It is the statutory intent, not the government, that defines "value." Counts One and Two clearly allege that defendant received real estate in the

9

City of Burton. The statute requires the government to prove that this real estate was a "thing of value"; it does not require the government to specify in the indictment how that value is to be determined. Cases have uniformly allowed juries to determine the value of transactions and property by any reasonable, objective means. *See, e.g., United States v. Fernandes*, 272 F.3d 938, 944-45 (7th Cir.2001) (list of payments expected by public official allowed jury to conclude his bribery scheme involved more than $5,000); *United States v. Zwick*, 199 F.3d 672, 689-90 (3d Cir.1999) (since $15,000 bribe was paid for site plan approval, the approval was clearly worth more than $5,000); *United States v. Marmelejo*, 89 F.3d 1185, 1191-94 (5th Cir.1996) (conjugal visits allowed by county sheriff - though of no value to the county - must have been worth more than $5,000, as inmate paid $5,000 per month plus $1,000 per visit).

In the instant case the government will present evidence showing that the property demanded and received by defendant was worth about $15,000 - $20,000, and that the property was given due to defendant's previous and anticipated assistance to Rizzo in facilitating business transactions worth considerably more than that. This is enough to satisfy the $5,000-value element of Section 666.

## COUNT TWO

Count Two of the indictment charges defendant with corruptly soliciting and accepting a bribe, in violation of Section 666(a)(1)(B), which states as follows:

> [Whoever, if the circumstance described in subsection (b) of this section exists –] being an agent of ... a ... local ... government ... corruptly solicits or ... accepts ... anything of value from any person, intending to be influenced or rewarded in connection with any business ... of such ... government ... involving any thing of value of $5,000 or more [commits an offense against the United States].

The essential elements of this crime are as follows:

1) that defendant was an agent of a local government;

2) that he solicited or accepted a thing of value;

3) that he did so corruptly, that is, with the intent to be influenced or rewarded in connection with some business of the local government;

4) that the business involved any thing of value of $5,000 or more; and

5) that the local government received more than $10,000 under a federal program during a one-year period including the date of defendant's solicitation or acceptance.

*See, e.g.,* Seventh Circuit Federal Jury Instructions (1999); Eighth Circuit Federal Jury Instructions (2003); and Eleventh Circuit Federal Jury Instructions (2003). Count Two clearly and unambiguously alleges all of the above elements.

In *United States v. Freeman*, 208 F.3d 332 (1st Cir.2000), the defendant was a

Peabody, Massachusetts, police officer charged with having conspired with a lounge owner to solicit bribes "to curry favor with him and to buy his silence about licensed premise violations" (208 F.3d at 336), in violation of 18 USC §§ 371 and 666(a)(1)(B).  The First Circuit held that the district court had correctly denied defendant's motion for a judgment of acquittal on this charge, stating as follows:

> Stated in terms of the government's theory of the case, the government needed to prove that Freeman and DiBella entered into an agreement in which Freeman would "accept or agree to accept" valuable benefits from DiBella, including cash payoffs, loans, and special treatment at the Golden Banana, intending to be "influenced or rewarded" for helping DiBella and his son avoid trouble with the Peabody police or the Peabody officials who oversee the Golden Banana's license to sell liquor.
>
> There was sufficient evidence to support the government's conspiracy theory....  DiBella paid Freeman approximately $100 per week in cash for almost four years, and loaned money to Freeman's brother and to one of Freeman's friends – money that was never repaid.
> \* \* \*
> Moreover, a reasonable trier of fact could have found that the cash payments, loans, and other special treatment that Dibella bestowed upon Freeman were not given in consideration for any legitimate work that Freeman performed on DiBella's behalf.  During the relevant time, Freeman was not working as a security guard or in any other capacity at the club.
> \* \* \*
> Second, there was some evidence that Freeman obtained the cash payments, loans, and special treatment "intending to be influenced or rewarded" for his help in insulating the Golden Banana and Francis DiBella [son] from trouble with local police and city officials.
> \* \* \*
> When asked why he made cash payments to Freeman, DiBella

12

responded:

> Why? Because I, you know, every time you talk to him it was drugs, drugs, drugs. And your son is on the top of the DEA list. And, you know, they're watching him and you got to be careful, because the City of Peabody is looking to shut you down, they want to take your license away from you.
>
>     *  *  *
>
> DiBella also testified that Freeman never so much as "fixed an overdue library card" on his behalf. Asked whether he "ever agreed with Sergeant Freeman to have him turn his back on licensing violations," DiBella answered, "I never agreed to anything like that." Freeman insists that DiBella's testimony conclusively establishes that DiBella never voluntarily agreed to trade benefits with Freeman in return for favors, but rather that DiBella was "shaken down," the victim of extortion. This according to Freeman, foreclosed a conspiracy conviction.
>
> The trial court disagreed and so do we. Although DiBella denied that he entered into an agreement with Freeman, the jury was entitled to disregard DiBella's testimony on this point and draw opposing inferences from DiBella's course of conduct and the testimony of other witnesses . . . . "[T]he agreement may be express or tacit and may be proved by direct or circumstantial evidence."

*Freeman, supra,* 208 F.3d at 340-42.

*United States v. Gee*, 432 F.3d 713 (7th Cir.2005) involved a conspiracy under which a private agency made payments to a Wisconsin State Senator (Gary George) in an effort to obtain contracts to administer a state welfare program. On Gee's appeal from his conviction, the Seventh Circuit wrote as follows:

13

> Another argument is that the evidence does not establish any specific act that George took in response to any specific payment. Gee contends that the absence of a *quid pro quo* prevents conviction. Yet the statute does not require any such link. A *quid pro quo* of money for a specific legislative act is *sufficient* to violate the statute, but it is not *necessary*. It is enough if someone "corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government or agency involving any thing of value of $5,000 or more". 18 U.S.C. § 666(a)(1)(B). A sensible jury could conclude that George had this corrupt intent, and that Gee and Sostarich conspired with George to carry out a plan in which federal money in [the private agency's] hands was exchanged for George's influence.

*Gee, supra,* 432 F.3d at 714-15.

In the instant case Count Two alleges that defendant Abbey solicited and accepted a particular parcel of real property "intending to be rewarded and influenced in connection with business transactions of the City of Burton involving a value of $5000 or more." This is sufficient to state the offense; to allow defendant to prepare for trial; and to plead double jeopardy should he be prosecuted again for soliciting or accepting the same parcel. (Moreover, as noted earlier, the government intends to seek a superseding indictment specifying that the transactions were and would be "transactions relating to real estate developments in the City of Burton in which Louis Albert-Blake Rizzo had a financial interest").

## COUNT THREE

Count Three charges defendant with affecting commerce by obtaining the specified lot "under color of his official right as City Administrator," in violation of the Hobbs Act, 18 USC §1951.  At pages 11-14 of his brief defendant argues that this count fails to state an offense because it does not allege that anyone was **deprived** of property; citing *Scheidler v. National Organization for Women*, 537 U.S. 393 (2003), he asserts "Pursuant to *Scheidler*, the deprivation of property from somebody by the accused is a necessary element of a Hobbs Act violation."

This assertion is precisely wrong. In *Scheidler* plaintiffs argued that defendants had conspired to violate the Hobbs Act (and, therefore, were subject to the civil sanctions of the RICO statute, 18 USC §§ 1961 and 1964) by attempting to deprive abortion clinics of the exercise of their legal property rights.  The Supreme Court held that deprivation of such rights was **not** enough to constitute a violation of the Hobbs Act:

> There is no dispute in these cases that petitioners interfered with, disrupted, and in some instances completely deprived respondents of their ability to exercise their property rights.  Likewise, petitioners' counsel readily acknowledged at oral argument that aspects of his clients' conduct were criminal.  But even when their acts of interference and disruption achieved their ultimate goal of "shutting down" a clinic that performed abortions, such acts did not constitute extortion because

> petitioners did not "obtain" respondents' property. Petitioners may have deprived or sought to deprive respondents of their alleged property right of exclusive control of their business assets, but they did not acquire any such property. Petitioners neither pursued nor received "something of value from" respondents that they could exercise, transfer, or sell. To conclude that such actions constituted extortion would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion.

*Scheidler, supra,* 537 U.S. at 404-05 (citation omitted). Thus, the Hobbs Act criminalizes someone who "obtains" property wrongfully, not someone who wrongfully "deprives another" of property. Count Three in the instant case correctly alleges the former.

At pages 14-15 of his brief defendant states correctly that the Hobbs Act applies not only to those public employees who actually have the power to affect the victim of the extortion, but also to those who "create the reasonable impression that they do," citing *United States v. Saadey*, 393 F.3d 669 (6th Cir.2005). He then erroneously argues that the indictment must specify whether he had actual official power, or merely created a reasonable impression that he did. He cites no authority for this conclusion, and none exists. Defendant can be found guilty of violating the statute regardless of which theory the evidence shows to be applicable. By way of analogy to a possession of cocaine case, defendant's argument amounts to a claim that the

indictment must specify whether the possession was sole or joint, and whether it was actual or constructive. There is no such requirement in the law, as the jury is routinely instructed that the statute is violated by **any** of these alternatives. The same is true as to Count Three here; if the evidence at trial raises the issue, the jury should be instructed accordingly.

Also at page 14 of his brief defendant complains that it is not clear from the indictment "who the victim was supposed to be: Rizzo, Spangler, both, or somebody else?" Reading the indictment as a whole, it is quite obvious that the victim was Rizzo alone. But, regardless, there is simply no requirement in the statute that the "victim" of the extortion be identified in the indictment, and defendant cites no law to the contrary. His rhetorical question is, therefore, irrelevant.

Finally, defendant argues that Count Three is deficient in failing to allege that he was not entitled to the property he obtained "under color of his official right as City Administrator." He raises the spectacle that, in the absence of such an allegation, "every tax or fee collector for a governmental unit violates the Hobbs act." Defendant's brief at 16. Read literally, both the Hobbs Act and Count Three would permit this possibility. Courts have, therefore, interpreted the Act to apply only to "wrongful" obtaining of property, and have defined that term in jury instructions. *See,*

*e.g.,* O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, § 53.09: "Extortion Under Color of Official Right" - Defined, and cases cited. In *United States v. Shelton*, 573 F.2d 917, 921 (6th Cir.1978), the Sixth Circuit stated that "Extortion under color of official right means that property was unlawfully obtained from another person by a public officer under the color of his office, and the property so obtained was not due and owing to the public officer, nor was the property due and owing to the office he represented." Such an instruction would be appropriate in the instant case, and would eliminate any concern that defendant would be convicted for obtaining property that he or the City was legally owed.

[While a jury instruction would be sufficient to clarify the existing Count Three, the government may well seek to add some clarifying language to this count, as well, in the superseding indictment that will be promptly sought for other reasons].

Accordingly, the United States requests the court to delay ruling on defendant's motion until July 13, 2006; to then consider it as applied to any superseding indictment returned by the grand jury; and to deny it for the reasons stated above.

                                         Respectfully submitted,

                                         STEPHEN J. MURPHY
                                         United States Attorney

Dated: June 27, 2006                     s/ ROBERT W. HAVILAND (P25665)
                                         Assistant U.S. Attorney
                                         600 Church Street
                                         Flint, MI 48502 (810) 766-5031
                                         robert.haviland@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2006, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Charles A. Grossmann.

I further certify that I have mailed by United States Postal Service the document to the following non-ECF participant:

none.

                                         s/ ROBERT W. HAVILAND (P25665)
                                         Assistant United States Attorney
                                         600 Church Street
                                         Flint, MI 48502
                                         Phone: (810) 766-5031
                                         E-Mail: robert.haviland@usdoj.gov